AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
для the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Gabriel Daniel Pinnace<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )  Case No.<br>3:23-mj-1414-MCR |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 26, 2023__ in the county of __Duval__ in the
__Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(6) | Knowingly Making a False Statement as to a Material Fact to a Federally Licensed Firearms Dealer During the Purchase of a Firearm |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Chad Lifsey, Special Agent, ATF
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 9/11/23

_____
*Judge's signature*

City and state: Jacksonville, Florida        MONTE RICHARDSON, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

I, Chad Lifsey, being duly sworn, depose and state:

I. **INTRODUCTION**

### Identity of Affiant

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I have been employed by ATF since May 2017. I am a graduate of the Federal Criminal Investigator Training Program and ATF Special Agent Basic Training Program at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have successfully completed investigative training courses in the fields of narcotics investigations and firearms investigations in addition to conducting both state and federal felony level criminal investigations.

2. Prior to my employment with ATF, I was employed as a police officer in Columbus, Georgia, for over ten years, where I served as a patrol officer, narcotics investigator, and a patrol supervisor. During my time as a narcotics investigator, I received specialized training to include drug enforcement, investigation of drug traffickers, drug recognition and terminology, clandestine labs investigator training, undercover operations, interviewing techniques, financial/money laundering training, and formal and on-the-job training in the area of electronic surveillance. I have participated in numerous drug-related investigations involving a variety of drugs. I am familiar with and have been involved in all standard methods of investigation, including management of confidential informants, visual surveillance,

electronic surveillance, informant interviews, interrogations, social media investigations, and undercover operations.

3. The information in this affidavit is based on my personal knowledge as well as information, knowledge, and observations of other federal, state, and local law enforcement officers. In recounting the events that took place during the controlled purchase discussed herein, my sources include debriefing of the undercover detective who conducted the controlled purchase as well as my review of surveillance audio and video and any written or otherwise recorded communications related to the controlled purchase. This affidavit does not contain all information discovered during this investigation, rather only that believed necessary to provide a legal basis for the requested criminal complaint.

## Requested Criminal Complaint

4. I submit this affidavit in support of a criminal complaint charging Gabriel Daniel PINNACE with violating the provisions of Title 18, United States Code, Section 922(a)(6).

## Statutory Authority

5. I am familiar with federal law including Title 18, United States Code, Section 922(a)(6) which prohibits a person from knowingly making a false oral/written statement to a federally licensed firearms dealer and this statement was intended to deceive such firearms dealer with respect to a fact material to the lawfulness of the sale of the firearm to the defendant.

2

## II. PROBABLE CAUSE

### A. Debriefing of Cooperating Defendant

6. On August 11, 2023, and again on August 16, 2023, Homeland Security Investigations (HSI) Special Agent (SA) Anthony Algozzini, U.S Border Patrol (USBP) Agent Juan Miranda and I met with an individual, who later became an ATF cooperating defendant (CD)[1] during the investigation of a federal international firearm trafficking conspiracy. The CD confirmed that Gabriel Daniel PINNACE, who was positively identified by the CD from a photographic lineup, was a firearm straw purchaser. The CD agreed to assist ATF in furtherance of the federal investigation in PINNACE.

### B. Controlled Communications:

7. Between August 23, 2023, and August 25, 2023, at the direction of ATF, the CD conducted a series of controlled calls to PINNACE. The recorded conversations were in Spanish and were translated in real-time by Agent Miranda and later reviewed by HSI SA Melissa Villanueva. In addition to the controlled calls, the CD communicated with PINNACE through an encrypted calling and messaging service, "WhatsApp." According to SA Villanueva and Agent Miranda, the CD and PINNACE discussed a future purchase of firearms, the costs of those firearms, the

---

[1] The cooperating defendant (CD) was in pre-trial incarceration at the John E. Goode Pre-trial Detention Facility at the time this information was obtained. The statements made by the CD were made against his/her own penal interest. The CD provided additional intelligence of a past international firearm trafficking conspiracy that occurred in May 2021. The CD agreed to proactively assist ATF in the investigation in exchange for prosecutorial consideration in the federal investigation.

3

type of firearms, PINNACE's broker fees, and timeline of the purchases based on PINNACE's work schedule. Ultimately, the two agreed to meet on Saturday, August 26, 2023, to conduct the firearm transaction.

    C.    <u>August 26, 2023, Controlled Purchase:</u>

8. On August 26, 2023, at 0845 hours, ATF Jacksonville, and Homeland Security Investigations (HSI) Jacksonville met at a predetermined location and conducted a briefing about the anticipated firearms purchase from PINNACE. Prior to the operation, I provided an undercover (UC) ATF SA # 6172 with five thousand dollars ($5,000.00 USD) of previously recorded ATF Agent Cashier (AC) Funds. I conducted a search of the CD. No contraband was found. The CD was communicating with PINNACE via text and would accompany the UC during the operation for the purpose of an introduction. The UC outfitted himself with electronic monitoring and recording equipment and proceeded to Winn-Dixie, located at 1531 Monument Boulevard, Jacksonville, FL 32225, as determined by PINNACE. Note: Prior to the meeting, PINNACE wanted to sell the CD two of his existing firearms, an AR-15 style firearm and a Glock pistol.

9. At 0914 hours, the UC and CD arrived in the Winn Dixie parking lot. PINNACE was still at his residence, located at 958 Sunset Glen Court, Jacksonville, FL. At 0919 hours, HSI SA Anthony Algozzini and I observed PINNACE leaving

his residence in a 2017 Chevrolet Cruz, FL tag # KAND35.[2] At 0922 hours, PINNACE arrived at Winn-Dixie and entered the UC vehicle.

10. Based on my live monitoring of the undercover meeting, and my August 29, 2023, review of the video and audio recording, which occurred mostly in English, I learned the following information. During the meeting, the UC explained to PINNACE that the UC had prospective buyers in New Jersey who were looking for two brand new firearms from the store. The UC confirmed that PINNACE wanted $500.00 for each firearm because those were clean and are in his name. PINNACE advised the UC that he (PINNACE) needed additional time to scratch off the serial numbers before transferring them to the UC. The UC advised PINNACE that the UC would erase the serial numbers or PINNACE could report them stolen. PINNACE preferred to erase the serial number himself and stated it would take 30 minutes. PINNACE advised the store opened at 0900-0930 and he would have to wait about 25 minutes for the background check. The two spoke about the timeline of the purchase. The UC counted $1,000.00 for the purchase of the AR pistol, $700.00 for the Glock, and $700.00 for the Smith and Wesson. The UC showed PINNACE additional currency for PINNACE's broker fee. PINNACE reported he was going to two different stores and stated he sent the address to the CD of one of the stores but would not tell the UC which two. PINNACE stated he

---

[2] According to the Florida Driver and Vehicle Information Database (DAVID), the 2017 Chevrolet Cruz is registered to Stephen B Stanley Laurence with a listed address of 958 Sunset Glen Ct Jacksonville, Florida 32225.

5

needed at least an hour and a half because he needed to erase the serial numbers. The UC offered an additional amount of currency for PINNACE to do the transaction faster and without using extra time to erase the serial numbers. PINNACE agreed to let the UC erase the serial numbers and instructed the UC to wipe down the firearms with alcohol.

11. At the conclusion of the meeting, SA Algozzini and I surveilled PINNACE as he left the Winn-Dixie and returned to his residence. At 0959 hours, we observed PINNACE leaving the residence and surveilled him travel to Mayport Gun and Pawn, federal firearms license (FFL) # 1-59-031-02-OA-49608, located at 10236 Atlantic Boulevard, Jacksonville, Florida. There, ATF Task Force Officer (TFO) Abu Jalloh, ATF SA Jason Slosson and SA Alyse Simmons observed PINNACE's vehicle but did not observe PINNACE entering the FFL.

12. At 1008 hours, PINNACE departed the FFL parking lot, and the surveillance team lost visual contact minutes later. At 1017 hours, SA Mark Mutz observed the Chevy Cruz arriving at Gun Gallery, FFL# 1-59-031-01-5E-56207, located at 10268 Beach Boulevard, Jacksonville, Florida. At 1018 hours, SA Mutz reported PINNACE entered the store. At 1030 hours, SA Mutz reported PINNACE exited the FFL with a paper in his hand.

13. Agents observed PINNACE leave Gun Gallery and followed to Strike Zone Fishing LLC, FFL# 15911664-01, where SA Algozzini and I observed PINNACE enter the store. SA Jesse Hooker entered Strike Zone and reported that

he heard PINNACE speaking to employees in the gun section about a Springfield firearm. SA Hooker took photographs of PINNACE while inside the store. At 1049 hours, SA Algozzini and I observed PINNACE exit Strike Zone without anything visible in his hands and left the FFL.

14. SA Slosson and SA A. Simmons surveilled PINNACE as he traveled to I-295 and Monument Boulevard. At 1057 hours, SA Algozzini and I observed PINNACE arrive at his residence.

15. At 1058 hours, SA Algozzini and I observed PINNACE exit the dwelling with a bag in hand and open the trunk of the Chevy Cruz. PINNACE then traveled to Lee Street from Lone Star Road and the surveillance team lost visual of PINNACE shortly thereafter. At 1109 hours, SA Slosson and SA A. Simmons located the Chevy Cruz at Mayport Gun and Pawn. At 1116 hours, SA Slosson observed PINNACE exit the store and reported via radio that PINNACE appeared to have a gun box in his hand.

16. At 1118 hours, PINNACE advised the CD that he was on the way as reported by the UC. This location was previously agreed upon. PINNACE then traveled to Huffman Boulevard Park, located at 2775 Huffman Boulevard Road, Jacksonville, Florida. Upon arrival, PINNACE parked and made contact again with the UC and CD who were waiting at that location, as observed by SA Algozzini, ATF TFO Abigail McCaughey, and I.

17. Based on my live monitoring of the undercover meeting and my August 29, 2023, review of the video and audio recording, and confirmation with the UC on August 30, 2023, PINNACE opened the passenger door of the UC vehicle and provided the UC with what he referred to as "my Glock" with three magazines. PINNACE stated he did not want to give the UC the boxes because it had serial numbers on it. PINNACE then provided the UC with Springfield XD9 and stated, "I just got this out of the store." PINNACE told the UC that he needed to clean these with alcohol and erase the serial numbers. The UC placed $1,000.00 on the front passenger seat at the request of PINNACE to show PINNACE his purchaser's fee. PINNACE then left the UC vehicle and returned moments later with the Andro Corp. AR-15. The UC then gave PINNACE another $900.00 which included the previously agreed amount of $400.00 to erase the serial numbers. PINNACE paid the CD with $300.00 from his own profit. PINNACE then provided his telephone number of 305-793-9962 to the UC and instructed the UC to put him in his contacts as MIA (for Miami). PINNACE stated to the UC, "this is how we are going to do business" and told the UC that whatever the UC needs, the UC must let him know ahead of time because he (PINNACE) buys them [firearms] in his name. PINNACE stated he was going to get a girl with a gun license to assist him with future straw purchases. PINNACE stated he has bought over 20 guns and has some for himself and added that he also collects guns. PINNACE told the UC to talk in code when they communicate.

18.     At the conclusion of the firearm transaction, the UC and CD left the scene but minutes later were contacted by PINNACE because he forgot to maintain custody of the firearm box(es). The UC and CD met with PINNACE at Murphy Express (Gas Station) located at 11930 Beach Boulevard, Jacksonville, Florida, (as reported by TFO McCaughey) and turned over the gun box(es) to him.

19.     The UC and CD then traveled to the debriefing location. At that time, I conducted a post operation search of the CD. No contraband was found. I recovered $300.00 of ATF AC funds from the CD that was provided to him by PINNACE for his introduction fee. I also took into ATF custody a Glock, model: 19GEN5, 9mm pistol, serial number: BTPV309; a HS Produkt (Springfield) model: XD-9, 9mm pistol, serial number: XD912647; and an Andro Corp Industries, model: ACI-15, multi caliber (5.56x45mm) short-barreled rifle, serial number: J2-008510, and other firearm accessories.

D.     Review of ATF Form 4473:

20.     On August 29, 2023, I went to Mayport Gun and Pawn and scanned a copy of the original ATF Form 4473 (revised May 2020), completed by PINNACE during the straw purchase on August 26, 2023.

21.     In section A, the form showed that PINNACE transferred a Springfield Armory, XD9, 9mm pistol, serial number: XD912647; and a Glock, model: 19GEN 5, 9mm pistol, serial number: BTPV309.

22. In block 7, the sale indicated a part of the transaction is a pawn redemption with that box checked and a "1" indicating how many. The attached receipt showed the total price including tax and fees for the Springfield XD was $445.38 with $405.00 being tendered in cash and $40.38 in check. Based on this information it appears the Glock 19 was a pawn redemption.

23. In block 10, PINNACE wrote an old prior address of 3544 St. Johns Bluff Road Apt. 1106 which matches the address on his driver's license but is not where he lives according to HSI subpoenaed leasing records.

24. Additionally, PINNACE wrote his place of birth (box 11) as Miami, Florida and stated he was a United States Citizen. According to U.S. Customs and Border Protection (CBP) Officer Eric Bailey, PINNACE has a I-551 (Lawful Permanent Residence) valid until April 2, 2032. Furthermore, according to documents found in the Florida's Driver and Vehicle Information Database (DAVID), PINNACE's passport was issued by the Republic of Honduras.

25. On question 21.a, which states in substance, are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you. PINNACE checked yes and signed the certification blocks in block 22 and dated in block 23.

## III. CONCLUSION

26. Based on the information in this Affidavit, I respectfully submit that there is probable cause to believe that on August 26, 2023, Gabriel Daniel PINNACE did knowingly making a false oral/written statement to a federally licensed firearms dealer and this statement was intended to deceive such firearms dealer with respect to a fact material to the lawfulness of the sale of the firearm to the defendant in violation of Title 18, United States Code, Section 922(a)(6).

27. I state that the above information is true and correct to the best of my knowledge, and I ask that the requested criminal complaint be issued.

Respectfully submitted,

_____
Chad Lifsey
Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives

Subscribed and sworn to before me this ___ day of September, 2023.

_____
Monte C. Richardson
United States Magistrate Judge
Middle District of Florida

11